IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MICHAEL K. BAILEY**, | |
| Plaintiff, | Case No. 2:21-cv-488 |
| v. | Judge James L. Graham |
| **MARC HOUK**, *et al.*, | Magistrate Judge Kimberly A. Jolson |
| Defendants. | |

**OPINION AND ORDER**

Plaintiff Michael K. Bailey is a state inmate proceeding without the assistance of counsel. He brings this action under 42 U.S.C. § 1983 against Defendants Marc Houk and Kathleen Kovach (collectively "Defendants"), members of the Ohio Adult Parole Authority (the "OAPA"), in their individual and official capacities. (Doc. 3.) Defendants moved to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) asserting that most of Plaintiff's claims are barred by the statute of limitations and that the remainder should be dismissed for failure to state a claim upon which relief can be granted. Magistrate Judge Jolson issued a Report and Recommendation ("R&R") recommending the Court grant Defendants' motion. (Doc. 9.) Plaintiff timely objected to portions of the R&R (Doc. 10), and Defendants responded to Plaintiff's objections (Doc. 12). For the following reasons, the Court **OVERRULES** Plaintiff's objections (Doc. 10) and **ADOPTS** the R&R (Doc. 9).

**I.     Background**

Plaintiff is serving a life sentence for aggravated murder. (Doc. 3 at 4.) Since his May 1975 conviction, he has received nine parole hearings. Each hearing resulted in denial of parole. He has twice applied for executive clemency, and those applications were also denied. Plaintiff now

1

alleges that Defendants refused to investigate and correct errors in his parole records; that all of his applications for parole have been denied based on information Defendants knew was false; and that his applications for clemency were denied by the Governor of Ohio on the basis of recommendations for denial made by Defendants based on facts they knew were untrue.

## II. Statute of Limitations

Magistrate Judge Jolson chose not to analyze the statute of limitations defense because "Plaintiff has not stated a claim related to any of his parole denials." (Doc. 9 at 10.) Though I agree, I elect to rule on the statute of limitations defense. Section 1983 claims have a two-year statute of limitations. *Browning v. Pendleton*, 869 F.2d 989, 991 (6th Cir. 1989). The statute of limitations begins to run when the plaintiff knew or should have known of the injury forming the basis of his claim. *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001).

Plaintiff relies on the Sixth Circuit's opinion in his prior § 2254 case to assert that the statute of limitations for his § 1983 claims here has not expired. *See Bailey v. Wainwright*, 951 F.3d 343 (6th Cir. 2020), cert. denied, 141 S. Ct. 316, 208 L. Ed. 2d 62 (2020). Plaintiff's prior § 2254 petition alleged claims similar to those in the present suit. *See id.* There, the Sixth Circuit concluded that Plaintiff's claims did not satisfy the requirements of a § 2254 petition. *Id.* at 346. While Plaintiff satisfied the "in custody" requirement, and his petition rested on a violation of federal law, he could not show that he was in custody because of a violation of federal law. *Id.* The Sixth Circuit further stated: "[t]his conclusion, it is true, takes Bailey to the end of one road for relief. But it does not foreclose another. Nothing prevents Bailey from using § 1983 to raise these or similar claims." *Id.* at 347.

Here, Plaintiff asserts that the "Sixth Circuit already resolved the statute of limitations issue and allowed plaintiff to file this 1983 action . . . ." (Doc. 10 at 9.) Plaintiff also reasons that "[i]f

[he] had not been within the statute of limitations when his petition for writ of habeas corpus was filed, the District Court would have dismissed it for that reason and the Sixth Circuit would have not issued the Certificate of Appealability and appointed counsel for an appeal." (*Id.* at 10.)

This argument misconstrues the Sixth Circuit's opinion. The Sixth Circuit did not determine whether a potential § 1983 claim would be timely filed. It merely expressed that while a § 2254 petition is not the correct vehicle for Plaintiff's claims, a § 1983 claim may be. The absence of a statute of limitations discussion in his previous § 2254 proceeding does not mean that Plaintiff's current § 1983 claims are timely. Whether Plaintiff's current claims are timely is a matter for this Court to decide.

Accordingly, the Court must now apply the two-year statute of limitations to Plaintiff's § 1983 claims here. Plaintiff filed his complaint in the instant case on February 2, 2021. Therefore, only claims based on injuries which were or should have been discovered within the two years prior are considered timely.

The basis of Plaintiff's alleged injuries is the reliance on false information in his parole file for nine parole decisions and two clemency recommendations. Plaintiff asserts that all parties, himself included, knew of these errors by April 2016. (Doc. 3 at 22.) Therefore, the statute of limitations on injuries which occurred prior to April 2016 expired in April 2018, at the latest, which was well before Plaintiff's complaint was filed here. As for injuries which occurred after April 2016, the statute of limitations began running on the date of injury. Only two injuries occurred within the statute of limitations: Defendants' January 14, 2020 recommendation to deny executive clemency and Houk's involvement in Plaintiff's ninth parole hearing on January 22, 2020.

### III. Standard of Review

3

Magistrate Judge Jolson recommended granting the motion to dismiss. (Doc. 9.) She recommended that the claims against Defendants in their official capacities be dismissed because they are barred by the Eleventh Amendment. (*Id.* at 5.) She further recommended that the claims against Defendants in their individual capacities be dismissed on two grounds: (1) because Plaintiff's complaint fails to allege any specific "verifiable error" that Defendants knowingly relied on to make their parole determination or clemency recommendation and (2) because the OAPA acknowledged Plaintiff's allegation of inaccuracies in his parole records and offered him the opportunity to clarify those allegations in his ninth parole hearing and 2020 recommendation to deny clemency. (*Id.* at 8–9.)

Plaintiff timely filed objections to the R&R. (Doc. 10.) This case is now ripe for review.

The Court reviews de novo any part of the Magistrate Judge's disposition to which a party has properly objected. Fed. R. Civ. P. 72(b)(3). The Court may accept, reject, or modify the R&R, receive further evidence, or return the matter to the Magistrate Judge with instructions. *Id.*

Plaintiff objects to the Magistrate Judge's recommendation to grant Defendants' motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a claim must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [unlawful conduct]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted).

4

A pro se litigant's pleadings are to be construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, pro se plaintiffs must still provide adequate factual allegations to make their claim plausible. *Twombly*, 550 U.S. at 557.

The Court conducts a de novo review only of the parts of the R&R to which Plaintiff properly objected. *See* Fed. R. Civ. P. 72(b)(3). Plaintiff objects only to the recommended dismissal of his claims against Defendants in their individual capacities. Therefore, the portion of the R&R regarding the official capacity claims is adopted, and Plaintiff's official capacity claims are dismissed.

### IV. Claims Not Barred by Statute of Limitations

Plaintiff filed a second application for clemency on June 22, 2018. (Doc. 3 at 25.) His application discussed "the lies in his [candidate information sheet] and unsuccessful efforts he took to correct them up to that point . . . ." (*Id.*) The purported falsehoods are the details of the crime set forth in the candidate information sheet. These details are:

> [the victim] cooperated completely as he was laying on the floor begging the defendant not to shoot him the defendant told him that was exactly what he was planning on doing… he then placed the gun to the back of his head and shot him. The victim was found dead as he was shot and killed execution style… he was in need of money and planned on performing robberies until he had the amount needed and stated the only way he was going to be successful was to kill all the witnesses.

(*Id.* at 13.)

Plaintiff asserts that none of this is true. (*Id.*) The OAPA, including Defendants, recommended against clemency and noted that "the applicant makes note that his Parole Board file contains inaccurate information. Please refer to the application packet for additional information." (*Id.* at 26.) Clemency was denied on January 14, 2020. (*Id.* at 27.)

Plaintiff had his ninth parole hearing on January 22, 2020. (*Id.*) Defendant Houk participated in that hearing and acknowledged that the OAPA's understanding about the crime was

different than what was in the trial transcript and asked Plaintiff to explain what happened in his own words. (*Id.* at 27–28.) Plaintiff did so. His case was referred to the Central Office Board Review ("COBR"). (*Id.* at 29.). On February 20, 2020, the COBR imposed a three-year continuance and concluded that:

> Offender Bailey has served over 45 years for the brutal and senseless shooting death of a male victim during the commission of a robbery. He has a lengthy criminal history. He has engaged in risk relevant programing [sic]. His conduct has been acceptable for several years. His reentry plan is under developed [sic]. He fails to share genuine remorse for his senseless action. There is strong community opposition. The Central Office Board Review has determined that release at this time would not further the interest of justice given the serious nature of the offense and would place the safety and security of society in jeopardy.

(*Id.*)

## V. Analysis

This case raises important issues about the parameters of an Ohio inmate's federal due process rights with respect to parole.

Plaintiff's complaint can be fairly construed as raising two distinct kinds of due process claims: 1) violations of his procedural due process rights based on the failure to correct inaccuracies in his parole records and 2) violations of his substantive due process rights by denial of parole based on facts known to be untrue. (Compl. ¶¶ 50, 52.)

Magistrate Judge Jolson concluded that Plaintiff had not alleged a substantive due process claim. (*See* R&R at 6.) I disagree, because Plaintiff's allegations that he was denied parole based on information the parole authority knew was false implicates the kind of arbitrary and capricious decision-making courts have referred to in cases invoking the concept of substantive due process. *See, e.g.*, *Hussein v. City of Perrysburg*, 617 F.3d 828 (6th Cir. 2010).

A. **Procedural Due Process**

There is no constitutional right to parole. *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Persons convicted of crimes forfeit their constitutional right to liberty for the full term of their sentence. *Id.* When a state institutes a parole system in which parole is completely discretionary, it does not create a liberty interest protected under the Fourteenth Amendment. *Id.* at 12. If, however, a state parole system restricts discretion of the parole authority by mandating the granting of parole if certain factual predicates are met, then the state has created a liberty interest protected by the Fourteenth Amendment. *Id.* at 11–12. In such a state, an inmate's procedural due process rights consist of the right to be heard and the right to be informed why parole was denied. *Id.* at 16.

The Sixth Circuit has repeatedly held that Ohio's parole system is entirely discretionary and that Ohio inmates have no due process rights protected by the Fourteenth Amendment. *See, e.g., Michael v. Ghee*, 498 F.3d 372, 378 (6th Cir. 2007) ("the state of Ohio has not created a liberty interest in parole eligibility, as it has a completely discretionary parole system.").

In *Kinney v. Mohr*, No. 2:13-CV-1229, 2015 WL 1197812, at *4 (S.D. Ohio Mar. 16, 2015), another member of this court held that as a result of the Ohio Supreme Court's decision in *State ex rel. Keith v. Ohio Adult Parole Auth.*, 24 N.E.3d 1132 (Ohio 2014), the granting of parole in Ohio is no longer entirely discretionary and that Ohio inmates now have due process rights protected under the Fourteenth Amendment. These rights include the right to accurate parole records, the right to require the parole authority to investigate and correct alleged inaccuracies in the parole record, and the right to be free from denial of parole based on facts known to be untrue. *Id.*

*Kinney* has effectively become the law of this district. It has been followed in six cases by five district judges and four magistrate judges including Magistrate Judge Jolson in this case. (*See*

Doc. 9 at 7.) I respectfully disagree with my colleagues and decline to follow *Kinney*. I believe it was wrongly decided and has unfortunately and improperly transferred factfinding, which was formerly the domain of the Ohio parole authority, to the United States District Court. *See infra,* at 12.

> **1. The Ohio Supreme Court's decision in *Keith* and the Ohio statutes and administrative rules it relied upon do not create a liberty interest protected by the Fourteenth Amendment.**

"State-created liberty interests arise when a state places 'substantive limitations on official discretion.'" *Tony L. By & Through Simpson v. Childers*, 71 F.3d 1182, 1185 (6th Cir. 1995) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)). Generally speaking, a state "substantively limits official discretion 'by establishing substantive predicates' to govern official decisionmaking . . . and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met." *Id.* (quoting *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989)). Thus, for a state law to create a protected liberty interest, "the statute or regulation must require a particular substantive outcome. State-created procedural rights that do not guarantee a particular substantive outcome are not protected by the Fourteenth Amendment, even where such procedural rights are mandatory." *Id.; see also Jasinski v. Tyler*, 729 F.3d 531, 541 (6th Cir. 2013). "The state statute must use explicitly mandatory language requiring a particular outcome if the articulated substantive predicates are present." *Jasinski*, 729 F.3d at 541 (internal quotation marks omitted).

The state statutes and administrative regulations referred to in the Ohio Supreme Court's decision in *Keith* require the parole authority to ensure that the records it considers are accurate, but they do not mandate a specific outcome in the parole proceeding. Instead, they are procedural rules which an inmate may enforce in state court by an application for a writ of mandamus, just as

8

the plaintiff in *Keith* did, but they do not create a liberty interest protected under the Fourteenth Amendment. The Ohio Supreme Court's pronouncement in *Keith* that these procedural rules create a "minimal due-process expectation" that the records considered at a parole hearing are accurate does not create a right protected by the Fourteenth Amendment. Rather, the process due to an Ohio inmate under the Fourteenth Amendment is a federal question. *See Olim*, 461 U.S. at 249.

In *Kinney*, the court characterized some of the Ohio Supreme Court's rulings in *Keith* as limitations on the parole authority's discretion:

> Thus, in essence, the Ohio Supreme Court has determined that the Adult Parole Authority does not have complete discretion because it does not have discretion to rely upon falsified parole records, or refuse to investigate an inmate's allegations of substantive error in the parole record.

*Kinney*, 2015 WL 1197812 at *4.

Neither of these purported limitations on discretion create liberty interests. The mandate to investigate and correct alleged inaccuracies in parole records does not limit the parole authority's discretion to grant or deny parole. To say that the parole authority may not deny parole based on information it knows to be false is merely to state the obvious; it is a limitation which is implicit in any grant of discretion to a public official. Decision-making that amounts to abuse of power and breach of public trust is universally condemned. To suggest that such a "limitation on discretion" would create a liberty interest in an otherwise completely discretionary system of parole is untenable. Parole in Ohio remains completely discretionary, and Ohio inmates have no federal due process rights.

The *Kinney* court held: "[t]hus, viewing the facts in the light most favorable to the Plaintiff, he was deprived of his Fourteenth Amendment right [sic] due process right to a correct parole record . . . ." *Kinney*, 2015 WL 1197812 at *5. *Kinney*'s adoption of the Ohio procedural rules requiring accurate parole records as part of Kinney's federal due process rights is incorrect and

9

contradicts Sixth Circuit precedent. *See Sweeton v. Brown*, 27 F.3d 1162 (1994). In *Sweeton*, the Sixth Circuit, sitting en banc held "[it is] clear that procedural statutes and regulations governing parole do not create federal procedural due process rights . . . ." *Id.* at 1164. Explaining its ruling, the court said:

> A due respect for the doctrine of federalism, the structural principal by which we subdivide governmental power, discourages constitutionalizing state regulatory procedures. Otherwise federal courts would take over from state administrators and courts the interpretation of and enforcement of a whole host of local procedural rules governing such local matters as zoning, probate, licensing, school discipline or public health . . . .

*Id.* at 1165.

Thus, the Ohio Supreme Court's ruling in *Keith* and the statutes and rules it referred to therein do not create a liberty interest in parole, and Ohio inmates have no federally protected due process rights with respect to parole proceedings.

**2. Alternatively, if *Keith* and the Ohio statutes and administrative rules it relied upon do create a liberty interest, then an Ohio inmate's due process rights are limited to those specified by the Supreme Court in *Greenholtz*.**

In *Greenholtz*, the Supreme Court established the parameters of an inmate's due process rights under the Fourteenth Amendment when state law creates a liberty interest in parole as: "an opportunity to be heard" and the right to be told "in what respects he falls short of qualifying for parole." 442 U.S. at 16. *Greenholtz* has been the law of the land for over 40 years. It is the Supreme Court of the United States, not the Supreme Court of Ohio, that determines the extent of a citizen's due process rights under the federal constitution. Ohio's procedural rules requiring the parole authority to investigate and correct alleged inaccuracies in an inmate's parole records are therefore not protected under the Fourteenth Amendment and are not enforceable in a § 1983 action in federal court.

> [T]he question of which due process requirements apply is one of federal law, not state law. Thus, whether the parole board met Ohio's *state-law* requirements . . . is not dispositive of Jergens's *federal* due-process claim; as a constitutional matter, Jergens received adequate process so long as he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied. Indeed, the Supreme Court has explicitly rejected the view that federal courts must apply state procedural rules that go beyond the scope of the minimum required under the Due Process Clause, concluding that such reasoning would subject to federal-court merits review the application of all state-prescribed procedures in cases involving liberty or property interests.

*Jergens v. Ohio Dep't of Rehab. & Corr. Adult Parole Auth.*, 492 F. App'x 567, 572 (6th Cir. 2012) (cleaned up) (emphasis in original).

In *Greenholtz,* the Supreme Court specifically addressed the issue of claimed inaccuracies in parole records:

> "At the Board's initial interview hearing, the inmate is permitted to appeal before the Board and present letters and statements on his own behalf. He is thereby provided with an effective opportunity, first, to insure that the records before the Board are in fact the records relating to his case . . . This procedure adequately safeguards against serious risks of error and thus satisfies due process."

442 U.S. at 15.

The Ohio procedural rules considered in *Keith* list various kinds of information the OAPA should consider in parole proceedings, which include: any reports by any institutional staff members relating to the inmate's personality, social history and adjustment during confinement; reports of prior criminal record including records of earlier probation or parole; presentence or post sentence reports; recommendations regarding release made at sentencing or anytime thereafter by the sentencing judge or prosecuting attorney; any information received from a victim or victim's representative; any reports of physical, mental or psychiatric examinations of the inmate; and any other relevant written information concerning the inmate as may be reasonably available. In *Keith,* the Ohio Supreme Court said that the OAPA is required "to investigate and correct any significant errors" in these records before considering the inmate for parole. 24 N.E.3d at 1137. It

11

is apparent that such a body of information will be constantly growing and is likely to become a breeding ground for countless disputes of fact.

The *Kinney* court incorporated these Ohio procedural rules as part of an Ohio inmate's federal due process rights, holding that, if true, plaintiff's allegations that defendants failed "to investigate the inaccuracies and/or correct them" deprived him "of his Fourteenth Amendment Due Process right to a correct parole record." *Kinney*, 2015 WL 1197812, at *5.

In *Swarthout v. Cooke*, 562 U.S. 216 (2011), the Supreme Court explicitly rejected the view that federal courts can apply state procedural rules that go beyond the scope of the minimum requirements under *Greenholtz*. Noting that the plaintiffs had been afforded the right to be heard and were provided a statement of the reasons why parole was denied, the Court stated:

> That should have been the beginning and the end of the federal habeas courts' inquiry into whether Cooke and Clay received due process. . . . It will not do to pronounce California's 'some evidence' rule to be 'a component' of the liberty interest . . . . Such reasoning would subject to federal-court merits review the application of all state-prescribed procedures in cases involving liberty or property interests . . . .

*Id*. at 220–22.

Citing *Cooke*, the Sixth Circuit said in *Jergens*:

> What is more, even if Jergens did have a protected liberty interest, the question of which due process requirements apply is one of federal law, not state law. Thus, whether the parole board met Ohio's state-law requirements for meaningful review as established by *Layne* is not dispositive of Jergen's federal-due process claim; as a constitutional matter, Jergens received adequate process so long as he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied. Indeed, the Supreme Court has explicitly rejected the view that federal courts must apply state procedural rules that go beyond the scope of the minimum required under the Due Process Clause, concluding that such reasoning would subject to federal-court merits review the application of all state-prescribed procedures in cases involving liberty or property interests.

*Jergens*, 492 F. App'x at 571 (cleaned up).

Here, by incorporating the Ohio procedural requirements relating to the accuracy of parole records into an Ohio inmate's federal due process rights, the *Kinney* court has committed the error the Supreme Court warned about in *Cooke*. As a result, federal courts in this district are now performing merits review of the application of Ohio's procedural rules relating to parole. *See, e.g., Al'Shahid v. Hudson*, No. 2:18-CV-00033, 2020 WL 469876, at *1 (S.D. Ohio Jan. 29, 2020), report and recommendation adopted, No. 2:18-CV-33, 2020 WL 868569 (S.D. Ohio Feb. 21, 2020) (denying summary judgment and holding that genuine issues of fact regarding whether the parole board properly investigated and corrected alleged errors in an inmate's parole records must be resolved in a jury trial).

In *Greenholtz,* the Supreme Court expressed concerns about the proliferation of litigation while formulating its minimum standards for due process:

> The objective of rehabilitating convicted persons to be useful, law-abiding members of society can remain a goal no matter how disappointing the progress. But it will not contribute to these desirable objectives to invite or encourage a continuing state of adversary relations between society and the inmate. . . . Merely because a statutory expectation exists cannot mean that in addition to the full panoply of due process required to convict and confine there must also be repeated, adversary hearings in order to continue the confinement.

442 U.S. at 13–14.

Assuming arguendo that the Ohio Supreme Court's ruling in *Keith* and the statutes and administrative rules it relied upon do create a liberty interest in parole, then under federal law, an Ohio inmate's expectation that his parole records are correct is satisfied by providing him with the process due under *Greenholtz*. Under these rules, an inmate will have the opportunity to inform the parole authorities about perceived inaccuracies in his parole record, and they may exercise their discretion to determine the credibility and relevance of the inmate's claims and whether to investigate them.

13

Here, Plaintiff's complaint indicates that he was afforded those rights. According to Plaintiff, he was not only given the opportunity to be heard, but he was also given the opportunity to provide the board his version of the disputed facts. Plaintiff also states that the board did, on at least one occasion, investigate and correct a significant error, and that each time he was denied parole, the board always provided him with a statement of reasons for its denial.

### B. Substantive Due Process

Upon de novo review, the Court finds that Plaintiff's complaint also alleges violations of substantive due process through the OAPA's denial of parole based on facts known to be untrue, which warrants consideration here.

In *Kinney*, the district court appears to have conflated procedural due process and substantive due process issues: "[t]hus, viewing the facts in a light most favorable to the Plaintiff, he was deprived of his Fourteenth Amendment right Due Process right to a correct parole record as contemplated in footnote 5 of *Jergens*." *Kinney*, 2015 WL 1197812 at *5.

Footnote 5 of *Jergens* says nothing about the right to a correct record—a procedural right. The footnote instead discusses the right to be free from a denial of parole based on "blatantly unconstitutional policies . . . such as a prisoner's race or religion, or on a wholly arbitrary decision-making process," or reliance on false information. *Jergens*, 492 F. App'x at 571 n.5. Some courts and legal scholars have labeled this type of decision-making as a violation of substantive due process. *See, e.g., Guertin v. State*, 912 F.3d 907, 918 (6th Cir. 2019); Erwin Chemerinsky, *Substantive Due Process*, TUORO LAW REVIEW, Vol. 15, No. 4, Article 15 (1999).

The *Jergens* footnote did not suggest that the court was adopting the concept of substantive due process in parole proceedings. Judge Moore merely declined to "foreclose the possibility" that it might do so in some future case. In *Bailey v. Wainwright,* however, now Chief Judge Sutton and

14

Judge Kethledge in dicta expressed the view that due process, independent of a liberty interest, does not "prevent[] the Board from making arbitrary decisions, such as refusing to correct a flawed parole record." *Bailey*, 951 F.3d at 346.

Plaintiff has attempted to plead a claim that Defendants violated his substantive due process rights by denying his applications for parole based on information they knew was false. As Judge Moore pointed out in *Jergens,* the Sixth Circuit has not decided whether substantive due process analysis is appropriate in the context of parole. This Court is therefore called upon to consider whether substantive due process is appropriate in the context of parole proceedings.

I begin by noting the Supreme Court's observation in *Greenholtz*:

> Decisions of the Executive Branch, however serious their impact, do not automatically invoke due process protection; there simply is no constitutional guarantee that all executive decisionmaking must comply with standards that assure error-free determinations. This is especially true with respect to the sensitive choice presented by the administrative decision to grant parole release.

442 U.S. at 7 (internal citations omitted).

The Supreme Court also pointed out that the granting of parole is a special kind of executive decision-making:

> The parole-release decision . . . is more subtle and depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release.

*Id.* at 9–10.

State parole board members are often appointed by high-ranking executive branch officers, sometimes by their state governor. There is every reason to believe that these individuals are usually well qualified and highly trustworthy members of the community who are committed to fairly and carefully discharging their important duties. The risk that such an individual would choose to intentionally deny parole based on information he or she knew was false would seem to

15

be very low and even lower that such a person would be supported in sufficient numbers to constitute a majority. So perhaps in a state that has not created a liberty interest, protecting inmates from blatantly arbitrary denial of parole should lie not in the judicial branch, but in the executive power of appointment and removal.

In a state like Ohio, where inmates have no liberty interest protected under the Fourteenth Amendment, it is difficult to find a constitutional foundation for a substantive due process right. An Ohio inmate's interest in parole is not an interest in life or property, and his interest in liberty has been extinguished for the full term of his sentence, at least insofar as his right to be free from confinement in a normal prison environment is concerned. If an inmate were denied parole because of his race or gender, then a substantive due process claim might be linked to the Equal Protection Clause. *See, e.g., Jergens,* 492 F. App'x at 571 n.5. But Plaintiff makes no such claim here.

I fail to find any support for a substantive due process interest in parole in a state which has not created a liberty interest in parole. Higher courts have often said that in such states parole can be denied for "any reason or no reason at all." *See Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 236 (6th Cir. 1991). It is difficult to see why denial for no reason at all is any different than denial for the wrong reason or denial based on a false reason.

I conclude that Ohio inmates do not have substantive due process rights regarding parole, which would prevent the parole authorities from making arbitrary decisions, such as relying on or refusing to correct flawed parole records. I therefore find that Plaintiff's substantive due process claim should be dismissed, because he has no such rights under the United States Constitution. Alternatively, I find that even if Plaintiff did enjoy such rights, Plaintiff has not alleged a sufficient factual predicate for a substantive due process claim.

Here, Plaintiff alleges that Defendants' actions were taken on the basis of information they knew was untrue. He has not plead what specific information they allegedly relied upon was untrue. His complaint does quote the reasons given for denial of parole:

> Offender Bailey has served over 45 years for the brutal and senseless shooting death of a male victim during the commission of a robbery. He has a lengthy criminal history. He has engaged in risk relative programing [sic]. His conduct has been acceptable for several years. His reentry plan is under developed [sic]. He fails to share genuine remorse for his senseless actions. There is strong community opposition. The Central Office Board Review has determined that release at this time would not further the interests of justice given the serious nature of the offense and would place the safety and security of society in jeopardy.

(Doc. 3 at 29.)

Plaintiff fails to allege what information referred to in this statement of reasons was untrue.

Plaintiff likewise fails to allege just what specific falsehoods were relied upon when Defendants recommended denying Plaintiff's June 22, 2018 clemency application. Regarding Plaintiff's allegation that the information set forth in his candidate information sheet is false, Plaintiff's blanket assertion that "none of this is true" is a conclusory statement unsupported by any plausible factual allegations. Clearly, some of it is true. He was, after all, convicted of aggravated murder. Plaintiff failed to specify what exactly was false or to allege any facts or circumstances which would plausibly support the assertion. Furthermore, he has not alleged facts which would support the proposition that any alleged false information was relied upon by the governor in denying clemency. It is noteworthy that Defendants' recommendation included the statement that Plaintiff disputed the accuracy of some of the information contained in the recommendation.

Plaintiff's substantive due process claim is therefore dismissed for failure to state a claim upon which relief can be granted.

## VI. Conclusion

Ohio law does not create a liberty interest in parole, and Ohio inmates have no federally protected due process rights with respect to parole. If Ohio has created a liberty interest in parole, the federal due process rights of Ohio inmates are limited to the right to be heard and the right to be informed why parole was denied.

In either event, Ohio inmates have no federally protected due process rights with respect to enforcement of Ohio procedural rules, which require the parole authorities to maintain accurate parole records, investigate and correct alleged inaccuracies, and prevent them from denying parole based on false information. Ohio inmates have no substantive due process rights to prevent parole authorities from making arbitrary decisions, such as relying upon or refusing to correct false information in their parole file.

Plaintiff did not appeal Magistrate Judge Jolson's recommendation that his claims against Defendants in their official capacities be dismissed, and accordingly, those claims are hereby dismissed. Plaintiff did appeal her recommendation that his claims against Defendants in their individual capacities be dismissed. The Court overrules Plaintiff's objections and adopts Magistrate Judge Jolson's recommendation that Plaintiff's claims be dismissed, although it does so using a different analysis as set forth herein. All of Plaintiff's claims related to alleged injuries which resulted from his first eight parole hearings and first clemency application are barred by the statute of limitations and are hereby dismissed. All remaining claims are hereby dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

/s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: May 20, 2022